[Civ. No. 43324. Second Dist., Div. Two. June 23, 1975.]

ELTINGE AND GRAZIADIO DEVELOPMENT COMPANY et al.,
Plaintiffs and Appellants, v.
KENNETH D. CHILDS et al., Defendants and Respondents.

## COUNSEL

Fadem, Kanner, Berger & Stocker, Fadem, Berger & Stocker and Michael M. Berger for Plaintiffs and Appellants.

McKenna & Fitting, Aaron M. Peck, and Michael D. Berk for Defendants and Respondents.

## OPINION

**ROTH, P. J.**—Appellants, Eltinge and Graziadio Development Co., a partnership, George Eltinge and George L. Graziadio, the partners, appeal from a judgment interpreting the rental provisions of a ground lease entered against them in their action for declaratory relief against respondents, Kenneth and Margaret Childs.

On May 1, 1964, appellants (lessees) executed a ground lease on real property for a fixed period of 60 years, commencing May 1, 1964, in Palm Desert, with respondents (lessors) and terminating on October 31, 2025, with an option to lessees to extend the term for an additional 30 years.

Rental on a "net, net, net" basis was fixed for the first five years and was defined as "basic ground rent." Thereafter at the expiration of each five-year period "additional ground rent shall be authorized by which 6%

of . . . *appraisal value*[1] exceeds the annual basic ground rent . . . ." (Italics added.)

The lease in Article II thereof contains warranties by lessees which in pertinent part recite that "their *purpose* . . ." (italics added) is for the development of a shopping center; class A buildings will be constructed to accommodate the purpose and that no space will be subleased by lessees which shall at any time be used for sale of alcoholic beverages, pool or dance hall, distressed business; new or used vehicles or gambling or lottery activities or any unlawful activities.

Lessees contend that appraised value means value of the land based upon its use as a shopping center. Lessors assert it means fair market value.

The parties stipulated that: the only issue to be tried was the interpretation of the provisions of the lease contained in sections 3 and 4 of lease; such interpretation was to be made "only upon an examination of the 'four corners' of . . . lease, and such indisputable facts . . . supplied to the Court upon mutual agreement of the parties, in the event of a specific request from the Court for any such facts." The court made no request and no additional facts were supplied.

The court made its determination based upon the four corners of the lease without any qualifying testimony. Its construction thereof is a matter of law to be settled in accordance with the applicable principles governing the construction of contracts. (*Bates* v. *Industrial Property Holding Co.* (1957) 155 Cal.App.2d 697 [318 P.2d 741].) Since the trial court's interpretation did not depend upon the credibility of extrinsic evidence, we are not bound by its determination. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839].) Whenever possible the whole of a contract is to be read so that each clause helps to interpret the other and give effect to every part thereof. (Civ. Code, § 1641.) It has also been held that a covenant in a lease to use property for a particular purpose does not necessarily mean that lessee may only use the leased property for that purpose. (*Lippman* v. *Sears, Roebuck & Co.* (1955) 44 Cal.2d 136 [280 P.2d

---

[1]"There shall be periodic appraisals made of the demised premises (exclusive of any improvements) beginning five years from the effective date of this lease and, at the option of lessors, on every fifth anniversary thereafter during the term of this lease." Appraisal was to be conducted by members of the Masters Appraisers Institute. Provision was made for settlement of any dispute as to the evaluation.

775].) ■ A lease, too, should be so interpreted as to make it reasonable without violating the intent of the parties. (Civ. Code, § 1643.) Finally, it is not our function, nor do we have the power, to make a contract for the parties other than the one that they themselves have entered into. (*Addiego* v. *Hill* (1965) 238 Cal.App.2d 842 [48 Cal.Rptr. 240].)

■ Although the lease was unquestionably executed by the parties in the expectation that a shopping center would be initially built thereon, none of its terms required the maintenance of a shopping center for any fixed portion of the original 60-year period or during the option period of 30 years, should the option be exercised, nor do any of its terms exclude the use of the premises for a purpose other than those activities which are by its terms specifically excluded.

The judgment in pertinent part provided: "The term that 'there shall be periodic appraisals made of the demised premises (exclusive of any improvements)' in Article IV, Section 3, of the subject ground lease, shall for all purposes throughout the term of the subject ground lease, and any extension thereof, means appraisals of the fair market value of the demised premises in accordance with its highest and best use as if vacant and without regard to the terms and conditions of the subject ground lease." We agree.

Lessees argue that in determining the appraised value the appraisers must take into account the fact that the premises are being used as a shopping center. This contention was decided adversely to the position of lessees by this court in *Bullock's, Inc.* v. *Security-First Nat. Bk.* (1958) 160 Cal.App.2d 277 [325 P.2d 185].) In *Bullock's* which involved a similar situation, we held that value in the lease meant fair market value since the lease showed that the parties had not stated "value in use" but merely value.

In *Bullock's* we said at p. 283: "It is obvious from the rental provisions that the parties were contracting for the lessors to receive as rent a fixed percentage return on the value of the land, such value to be redetermined every ten years. They might have agreed on 4 percent or 6 percent, but they chose 5 instead. Moreover, it must be remembered that this is a 'net' lease—i.e., the lessee pays *all* taxes and other expenses in

connection with the property. From the method of calculation which the parties agreed upon it may reasonably be inferred that they were thinking in terms of interest rate on a capital investment. They fixed the net rate of return on the lessor's investment at 5 percent, but they also provided for fluctuation in the value of such investment. They realized that this capital asset might fluctuate in value from time to time and therefore provided for periodic reevaluation in order that the lessors might continue to receive a 5 percent return on the value of their investment. When the parties referred to the 'value' of the land in question they meant its monetary worth or marketable price—i.e., its *market value.*

"Appellants argue that 'if the parties had intended market value, they would have said market value.' However, we have already pointed out that using merely the word 'value' in the lease indicates that the parties meant market value. In fact, it seems clear that if the parties had intended anything *other than* market value, they would have said so expressly."

Lessees in reply to *Bullock's* assert that courts have never made a fetish out of the term "market value" and cite as illustrations condemnation cases in which there may not be any market value, or when the market value may not be the true indication of property taken. (See, e.g. *Citizens Utilities Co.* v. *Superior Court* (1963) 59 Cal.2d 805 [31 Cal.Rptr. 316, 382 P.2d 356]; *City of Pleasant Hill* v. *First Baptist Church* (1969) 1 Cal.App.3d 384, 397 fn. 1 [82 Cal.Rptr. 1].) However, these cases are inapplicable since the rationale behind them is that when market value is not a true indication of the property involved, then the courts will use some other method of valuation in order to establish reasonable compensation. Such is not the situation at bench.

As an adjunct to the same argument lessees urge upon us the rationale adopted by the New York courts and other states in cases such as *Plaza Hotel Associates* v. *Wellington Associates* (1967) 55 Misc.2d 483 [285 N.Y.S.2d 941], affd. (1968) 22 N.Y.2d 846 [293 N.Y.S.2d 108, 239 N.E.2d 736], which hold that in cases such as the one at bench the term "value" means "value in use" not "market value." However, we see no reason to depart from our holding in *Bullock's* and thus cause confusion in the law of leases. If the parties desire some other form of valuation they are free to spell it out in the lease. Absent a provision indicating some other form

of valuation *Bullock's* clearly indicates, and has for some 15 years, that the "value" means "market value."

The judgment is affirmed.

Fleming, J., and Compton, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 20, 1975.