[No. G004910. Fourth Dist., Div. Three. June 30, 1988.]

HUMPHRIES INVESTMENTS, INC., et al., Plaintiffs and Respondents, v.
LUCILLE I. WALSH, Defendant and Appellant.

COUNSEL

Hart, King & Coldren, Robert S. Coldren, Robert J. Incollingo and Mary F. Santandres for Defendant and Appellant.

Cooksey, Howard, Martin & Toolen, James M. Martin and Melissa W. Kennelly for Plaintiffs and Respondents.

**OPINION**

**SONENSHINE, J.**—Lucille Walsh appeals the court's clarification of the term "fair market value," the basis for rental adjustment on land leased to Humphries Investments, Inc. (Humphries).

I

Walsh, as lessor, with Humphries and Gilbert Ranney, as lessees, were parties to a 52-year ground lease executed in 1960. The lease contemplated the construction and operation of a mobilehome park. The property was correspondingly improved and continues in operation as a 150-unit park.[1]

Rent, for the first 25 years, was set at "seven percent of the current market value" or $15,000 per year.[2] Thereafter, appraisers would be appointed to "determine the market value," with rent for the remaining 27 years to "be a sum equal to seven percent of such appraised value or $15,000.00, whichever is the greater."

During the first 25 years, certain city ordinances and state codes were enacted which seriously hindered the ability of mobilehome park owners to convert the parks to any other use. Conditional use permits, deemed "change of use" applications, were required; the owner needed to file a "Conversion Impact Report," containing a detailed analysis of the present park, the availability of relocation space and relocation compensation the owner was prepared to underwrite. There was a further requirement of findings by the city that any conversion would not have an adverse effect on the city's available housing and the housing element of its general plan. Civil Code section 798 et seq. declared a "unique protection" for mobilehome park tenants was necessary and severely limited the reasons an owner could utilize to terminate tenancies.

In mid-1985, as appraisal time neared, the parties were unable to agree upon the elements of "fair market value," the basis for rental readjustment. In September, they executed an agreement allowing an arbitrator "to establish the proper criteria to be used . . . by the appraiser(s) to determine pursuant to the terms of the Lease, the market value of the demised premises." The agreement granted "the right to appeal any award of the arbitra-

---

[1] The lease provided "the premises are being leased for the construction and operation thereon of a Mobile Home Park. Lessee agrees to commence such construction as soon as possible after complete execution and delivery hereof and to complete the same with due diligence. . . . [¶] Lessee shall not during the first 10 years of the term hereof without the prior written consent of Lessor first had and obtained use the demised premises for any purpose other than for the construction and operation of a Mobile Home Park."

[2] Additionally, consumer price index adjustments were made every three years.

tor to the Superior Court . . . ." There would not be a trial de novo, "but rather, the court shall act as an appellate court and shall review the proceedings, findings, and conclusions to determine that the arbitrator's decision is in accordance with applicable law."

Following a hearing, the appointed arbitrator decided the leased premises "shall be appraised and revalued by independent, neutral appraisers as if such demised premises were vacant land, exclusive of all or any improvements thereon, and without regard for any current or hypothetical use of such land except the highest and best use for which the demised premises would be suited if vacant and unimproved."

Pursuant to the arbitration agreement, Humphries appealed to the superior court, contending "the market value should be determined according to what the property would sell for, in the hands of the Lessor, on the open market given all the facts." In particular, Humphries insisted "the zoning ordinances and municipal codes would necessarily be a great factor in determining the price and it therefore could not be ignored."

After submission of the stipulated facts and exhibits, and argument by counsel, the court modified the arbitrator's order to allow consideration of ordinances and statutes which might proscribe or render financially unfeasible a change of use of the property.[3] A motion to vacate the judgment and enter a different judgment was denied, and this appeal followed.

## II

The parties' "Stipulation of Facts for the Purpose of Trial and Rendering of Judgment" included the respective contentions of the lessee and lessor[4]

---

[3] The modification read, in its entirety, as follows: "The market value of the demised premises shall be determined by independent, neutral appraisers, in accordance with its highest and best use as if vacant land, exclusive of all or any improvements thereon, without regard to the terms and conditions of the present lease but considering as appropriate the impact of any legal impediments to a change of use created by zoning and other statutes and ordinances such as Westminster Municipal Code Chapter 17.59 and Article VI, 'Termination of Tenancy,' of the Mobile Home Residency Law, California Civil Code Sections 798.55 et seq., on the costs and feasibility of changing to another use and whether such other use would in fact be the highest and best use."

[4] Walsh contended the "market value of the demised premises" should reflect "the fair market value of the land excluding any value added or detracted by virtue of the mobilehome park, i.e., as if such premises were vacant land, exclusive of all or any improvements thereon, and without regard for any current or hypothetical use of such land except the highest and best use for which the demised premises would be suited if vacant and unimproved." (Par. 3(b) of the stipulation.)

Humphries insisted the same term should reflect "the fair market value of the land, exclusive of improvements, but taking into consideration, if appropriate from an appraisal standpoint, the physical condition of the demised premises at the time of the appraisal, together

and the ruling of the arbitrator. It further stated the sole issue to be decided by the court, "utilizing that standard of review that would be utilized by an appellate court in reviewing a similar order issued in a trial court," would be "[w]hether the arbitrator erred in issuing the order . . . ." They further agreed "that neither party has the burden of proof and that the court will decide whether method A or method B as set forth in paragraph 3 is more appropriate to be used as the method by which market value should be computed." Walsh initially claims the court had no authority to make any order incorporating language other than that contained in either paragraph 3(a) or 3(b) of the agreement. However, as treated in more detail in section III, *post,* the court merely explained and expanded the arbitrator's award.

■ The court also awarded costs to Humphries. We find them unwarranted. The disagreement which was the subject of arbitration "is as much the fault of the lessors as it is the fault of the lessee." (*Bullock's, Inc.* v. *Security-First Nat. Bk.* (1958) 160 Cal.App.2d 277, 289 [325 P.2d 185].) As in *Bullock's,* the parties here agreed in the arbitration stipulation each would "bear their own costs for their own attorneys' fees" and would "share the cost of the arbitrator, neutral appraiser, and *court costs* . . . ." (Italics added.) Although contemplating an appeal, the stipulation makes no mention of treating those costs or fees differently. "[T]he obvious conclusion is that the parties intended that [*any* resultant costs] be shared." (*Ibid.*)

## III

■ The major issue is whether a determination of "market value of the demised premises" should include any consideration of the heavy impediments to a change of use of the demised property. Unknown to any of the contracting parties at the time the original lease was executed, the State of California in 1978 determined "that the owners of mobilehomes occupied within mobilehome parks be provided with the unique protection from actual or constructive eviction afforded by the provisions of this chapter." (Civ. Code, § 798.55, subd. (a), as modified in 1982 and 1983.) Any change of use required issuance of necessary local permits and six months' or more notice to the homeowners. Local regulations strictly curtailed *all* conversions.

Walsh insists a ground lease lessor should not be required to share the risk of changes in the law which impact the business engaged in by the lessee, i.e., revaluation of the market value of the property cannot include consideration of the cost of complying with those laws. Under the circumstances of this case, we must disagree.

---

with the problems, costs and delays incident to converting the existing use of the property to a different use." (Par. 3(a) of the stipulation.)

Walsh required the construction of a mobilehome park as part of the consideration for execution of the ground lease at its inception. Plans and specifications for the construction were subject to the lessor's approval. And, for the first 10 years, the property could not be used "for any purpose other than for the construction and operation of a Mobile Home Park." Finally, the lessor insisted any improvements would remain on the property when the lessee vacated: "Upon the expiration or any sooner termination hereof, title to all improvements constructed and/or placed upon the demised premises by Lessee shall pass to Lessor." This litany does not comport with Walsh's insistence the landlord was unconcerned with the lessee's activities on the land and should not be required to bear partial responsibility for the consequences of the presence of the park.

Walsh relies on *Bullock's, Inc.* v. *Security-First Nat. Bk., supra,* 160 Cal.App.2d 277 and *Eltinge & Graziadio Dev. Co.* v. *Childs* (1975) 49 Cal.App.3d 294 [122 Cal.Rptr. 369] for the proposition that "value," for purposes of appraisal, means "market value" and not "use value." We quite agree. However, by condoning consideration of the regulatory restrictions placed upon the property, we do not sanction inclusion of the *rental* value of the property for mobilehome park use.

*Bullock's* recognized the distinction between "value *in use* (i.e., the utility of an object) [and] value *in exchange* (i.e., an object's worth in terms of marketable price)." (*Bullock's, Inc.* v. *Security-First Nat. Bk., supra,* 160 Cal.App.2d 277, 282.) There, the lease also provided for revaluation of the land, exclusive of the buildings and improvements, to determine the rent to be charged. And as here, "[t]he lease call[ed] for a determination of the value of the land, not the value of the use of the land for any particular purpose." (*Ibid.*) "The parties were not fixing rental value in the lease, they were fixing rent. They determined such rent by taking a fixed percentage of the full value (not the rental value) of the land. The parties based rent upon the *fair market value* of the property rather than upon its rental value for any given period of time." (*Id.*, at pp. 284-285.) Rental income from the apparently highly profitable department store could not be a factor in determining market value under these circumstances.

In *Eltinge & Graziadio Dev. Co.* v. *Childs, supra,* 49 Cal.App.3d 294, a dispute arose as to proper ground lease rent, calculated as a percentage of the appraised value of the demised premises. The original purpose of the lease was the development of a shopping center. The trial court and appellate tribunal held the fair market value would be determined through consideration of the land's highest and best use as if vacant and without regard to the terms of the lease. In other words, merely because the use of the property as a shopping mall had apparently ceased to be profitable, the value of the underlying property had not necessarily declined as well. The

property must be valued by itself without regard to the value of its use as a shopping center.

The above authorities emphasize the value of the land can neither be enlarged nor diminished because of the rental value of the lease. So it is here. It matters not for what amount the property could be rented—whether as a mobilehome park or a baseball field. What *does* matter is whether any other use is even possible. In neither *Bullock's* nor *Eltinge* were the lessees' rights, to change the use of the land, restrained. We do not find either authority proscribes consideration of local and state regulations which impact the *use* of the subject property.

Walsh does not argue zoning restrictions must be disregarded. Particular property may be ideally located for a high rise office building; but if zoned for single story residences, the area cannot be appraised as if the first use were feasible. We fail to discern why similar restrictive enactments, arising through no fault of either party to the lease, should receive disparate treatment.

In *Dressler* v. *County of Alpine* (1976) 64 Cal.App.3d 557 [134 Cal.Rptr. 554], the court addressed valuation of property for purposes of taxation. The property was assessed "at its full cash value," i.e., " ' "at the price that property would bring to its owner if it were offered for sale on an open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other." ' [Citations.]" (*Id.,* at p. 566.) Certainly, this determination requires assessment of what is termed the highest and best use of the land in question, or that to which the property could reasonably, practically, and lawfully be adapted. Moreover, "the factor of usability entails a consideration of all the uses to which a parcel is adapted, not merely the owner's current use; the highest and most profitable use is to be considered to the extent that the prospect of that use affects the market value of the land; [nonetheless], *uses which are not reasonably probable should be excluded.*" (*Id.,* at p. 567, italics added.)

In *Long Beach City H. S. Dist.* v. *Stewart* (1947) 30 Cal.2d 763 [185 P.2d 585, 173 A.L.R. 249], a condemnation proceeding, certain property was then farmed, but the surrounding area was zoned for, and contained, residential units. The court noted there could be no consideration of the adaptability of the property to a particular profitable use without a corresponding *availability* for that use. "[T]he jury should consider whether the land is or is not available for particular uses under existing zoning ordinances, as such 'availability' does affect market value." (*Id.,* at p. 766.)

And in eminent domain actions, "elements affecting value which, while possible, are not reasonably probable, should be excluded. [Citations.] Accordingly, where it is not shown that a suggested use would be profitable, or

where it appears that the operations cannot be carried on except at a loss, the prospect of use for such a purpose is not a proper element of value. [Citations.]" (*People* v. *Ocean Shore Railroad* (1948) 32 Cal.2d 406, 426 [196 P.2d 570, 6 A.L.R.2d 1179].)[5] Although the property may be adaptable for a certain use, there is the very real concern to a willing buyer of "whether its use for such purposes [is] economically feasible [and] it is therefore a factor which has an important bearing on the market value of the property." (*Ibid.*)

It may be that the highest and best use of the land would be to hold it for future development. Then the question becomes, what would a willing buyer pay a willing seller for the property, burdened as it is, but willing to speculate on the prospect? An appraiser may include in his suggested price what a buyer will pay in anticipation of a future possibility of change to a more valuable use. But he may not base the value on the actual value of the property if it were so unburdened.

Here, the impact of the ordinances and codes must be addressed in relation to the feasibility of *any* alternative use of the property and/or the likelihood of a future change in that status. As noted by the court, the appraisal will be made in accordance with the highest and best use of the land without regard to the present lease "but considering *as appropriate* the impact of any *legal* impediments to a change of use . . . ." (Italics added.) We find no error.

That portion of the judgment awarding costs to plaintiffs is stricken. In all other respects the judgment is affirmed. Parties to bear their own costs.

Scoville, P. J., and Wallin, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 14, 1988.

---

[5] "The market value of realty is to be measured by considering benefits to be garnered from the use of the property and the burdens placed upon it. Burdens are restrictions which may arise from zoning ordinances *or other legal limitations on the use of the land*." (*Twin Lakes Golf and Country Club* v. *King County* (1976) 87 Wn.2d 1, 3 [548 P.2d 538, 540], italics added.)