[No. G008167. Fourth Dist., Div. Three. Jan. 22, 1991.]

DANIEL WU et al., Plaintiffs and Respondents, v.
INTERSTATE CONSOLIDATED INDUSTRIES et al., Defendants
and Appellants.

## COUNSEL

Fierstein & Sturman, Mark J. Linder, Richard C. Moore, Bess Blank and B. J. Adelson for Defendants and Appellants.

Tredway, Brandmeyer, Brazelton & Lumsdaine and Jeffrey B. Singer for Plaintiffs and Respondents.

## OPINION

**WALLIN, Acting P. J.**—Interstate Consolidated Industries, Leo David, Simon David and R. Scott Bell (collectively ICI) appeal a summary judgment in favor of plaintiffs Daniel and Grace Wu (collectively Wu) and the denial of ICI's motion for summary adjudication of issues in this declaratory relief action. The sole issue presented is whether the trial court correctly concluded that a lease provision setting the rent during option terms at the "fair market rental value" required a determination of the rent based upon the particular purpose for which the premises were leased, rather than its highest and best use. We affirm.

Wu purchased a movie theater business in 1979 and accepted an assignment of the lease on the theater building. ICI is the successor in interest to the original lessor. The lease specifically provided "[t]he premises shall be used for a motion picture theater and such other uses as are incidental thereto, and for no other purposes without the prior written consent of [l]essor" and was for a term of five years with options to renew for three additional five-year periods. The rent was to be increased at the beginning of the second and third option periods. If the parties were unable to agree on the new rent, three appraisers would "independently and in good faith, appraise the demised premises and determine the fair market rental value . . . ." The two closest appraisals would be averaged and the resulting figure established as the rent for the option period.

In November 1985 Wu exercised the option for the period from March 1986 to February 1991. The March rent check for $2,985.55 was returned by ICI, which had determined the rent should be increased to $8,475 per month. In April Wu began depositing the rent checks into an account and the parties commenced the appraisal process to determine the new rental amount.

Wu's appraiser, Donahue & Co., fixed the fair market rental value of the premises at $3,000 per month. ICI's appraiser, William J. Hogan, concluded the fair market rental value ranged from $5,085 per month if the property was used as a theater to $9,887 per month at its highest and best use, retail specialty shops. In accordance with the lease, Donahue and Hogan selected a third appraiser, Robert A. Steele, who fixed the fair market rental value at $3,166.67 per month. Wu tendered a rental of $3,083.33, the average of the Donahue and Steele appraisals, but ICI refused it. ICI then rehired Steele to do a new appraisal based upon the highest and best use of the premises. Steele concluded the fair market rental value, assuming the highest and best use of the property as retail shops, to be $8,232 per month. ICI averaged the Hogan and the second Steele appraisals and demanded $8,475 per month rent.[1] Wu commenced this declaratory relief and breach of contract action. In ruling on the motion for summary judgment the trial court concluded that under the applicable law and the lease agreement, the proper method for determining the fair market rental value of the premises for the option period "is *at the particular purpose for which it was leased.*"

I

Code of Civil Procedure section 437c requires the trial court to grant a summary judgment motion when no triable issue exists as to a material fact and the moving party is entitled to judgment as a matter of law. ■ On appeal, we review the facts presented below, independently determining their effect as a matter of law and independently reviewing the trial court's determination of questions of law. (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].)

■ This dispute involves the interpretation of writings. The sole issue is whether "fair market rental value" means a rent based upon the potential highest and best use of the premises or upon the purpose for which it has been rented. ■ The parties presented no extrinsic evidence regarding

[1] Pending this appeal the parties have agreed Wu will continue to pay $3,083.33 per month as rent without prejudice to ICI's right to collect additional sums should the judgment be reversed or to increase the rent for the third option period.

the interpretation of the rental term. It is, therefore, a question of law and subject to our independent interpretation. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Stratton* v. *First Nat. Life Ins. Co., supra*, 210 Cal.App.3d at p. 1084.)

■ Applying basic rules of contract interpretation applicable to the construction of leases (*Eltinge & Graziadio Dev. Co.* v. *Childs* (1975) 49 Cal.App.3d 294, 297 [122 Cal.Rptr. 369]), the only reasonable interpretation of the term "fair market rental value" as used in the lease is that rent is to be established with reference to the nature of the premises and the purpose for which it has been leased, a motion picture theater. Reading the lease as a whole so that each clause aids in the interpretation of the others (Civ. Code, § 1641), the intent was clearly that the rent be based upon the use of the premises. The premises is not a generic commercial building, or raw land, which could be put to any number of uses within the sound commercial judgment of the lessee. It is specifically defined as the theater and its appurtenances. The lessee is only allowed to use the premises as a theater unless the lessor consents to another use. An interpretation that the rent during the option terms is to be based upon the highest and best use of the property despite the purposes for which lessor and lessee agreed it could be used, would be economically and commercially unreasonable and violate the intent of the parties. (Civ. Code, § 1643.)

The purpose of the option clause is to benefit the lessee (see *Mitchell* v. *Exhibition Foods, Inc.* (1986) 184 Cal.App.3d 1033, 1042 [229 Cal.Rptr. 535]), by ensuring an opportunity to continue its business and recoup its investment. Interpreting the option clause as ICI urges would have the opposite effect. ICI wants Wu to pay a rent that is commercially unreasonable for the business it is conducting, abandon its business and allow the lease to expire, or convert the premises to whatever new and different business is considered by ICI to be the highest and best use of the premises. ICI contends that to remain in the premises Wu must incur the substantial expense of converting the theater into a retail shopping center, an investment Wu may never recoup because in another five years ICI may conclude there is yet another highest and best use of the property. If so, Wu would again have to invest in a change of use of the premises, pay rent based on this new use, or vacate the premises and lose its investment. Such an option is in essence no option, is unreasonable, and could not have been the intent of the parties when they signed the lease.

Nonetheless, ICI urges that as a matter of law "fair market rental value" must be based upon the highest and best use of the premises regardless of the restrictions on use. However, the cases it cites, *Humphries Investments,*

*Inc.* v. *Walsh* (1988) 202 Cal.App.3d 766 [248 Cal.Rptr. 800], *Eltinge & Graziadio Dev. Co.* v. *Childs, supra,* 49 Cal.App.3d 294, and *Bullock's, Inc.* v. *Security-First Nat. Bk.* (1958) 160 Cal.App.2d 277 [325 P.2d 185], do not support its position. They involved long-term ground leases of land, virtually unrestricted as to use, which specifically called for a rent based upon a percentage of the fair market value of the land. In each case the court concluded the use being made of the land did not impact its fair market value and therefore should not be considered in establishing the rent.

*Bullock's, Inc.* v. *Security-First Nat. Bk., supra,* 160 Cal.App.2d 277, concerned a 50-year ground lease of land occupied by a department store in which the rent was to be adjusted every 10 years at " 'an amount equal to five per cent of the appraised value *of the leased land . . .*' exclusive of buildings and improvements thereon. [Italics added.]" (*Id.* at pp. 279-280.) In a dispute over the rent adjustment, the lessee contended the "value of the leased land" meant something other than the land's fair market value. The court recognized the distinction between "value *in use* (i.e., the utility of an object) [and] value *in exchange* (i.e., an object's worth in terms of marketable price)" (*id.* at p. 282), and held the parties intended the market value, not the use value, to control. (*Ibid.*) In rejecting the lessee's contention the court stated, " 'When applied without qualification to property of any description, ["value"] necessarily means the price it will command in the market.' [Citation.] There is nothing in the rental provisions which indicates that something other than market value was intended." (*Ibid.*)

The *Bullock's* court stated the parties had not intended to base the rent on the use value because the lease contemplated the lessors would receive as rent a fixed percentage return on the value of the land. (160 Cal.App.2d at pp. 282-283.) Noting that rental value is "the value of the use of the land for any purpose for which it is adapted . . . measured partially in terms of time, by the month or by the year, et cetera" (*id.* at p. 284), the court concluded the parties were not fixing rental value but were fixing rent. "They determined such rent by taking a fixed percentage of the full value (not the rental value) of the land. The parties based rent upon the *fair market value* of the property rather than upon its rental value for any given period of time." (*Id.* at pp. 284-285.)

Similarly, in *Eltinge & Graziadio Dev. Co.* v.*Childs, supra,* 49 Cal.App.3d 294, the parties entered into a 60-year ground lease for the purpose of constructing a shopping center. The lease provided for a basic ground rent and further that at the expiration of each five-year period " 'additional ground rent shall be authorized by which 6% of . . . *appraisal value* exceeds the annual basic ground rent . . . .' " (*Id.* at pp. 296-297.) The lessees

contended "appraised value" meant the value of the land used as a shopping center. But the court noted nothing in the lease restricted use of the property or required the maintenance of a shopping center upon it.[2] Relying upon *Bullock's* the court concluded that nothing in the lease suggested the parties intended "value" to mean value in use rather than "market value" and therefore the appraised value of the property must be its fair market value based on its highest and best use. (*Id.* at pp. 299-300.)

Finally, in *Humphries Investments, Inc.* v. *Walsh, supra*, 202 Cal.App.3d 766, the parties entered into a 52-year ground lease contemplating the construction and operation of a mobilehome park, but only restricted the property to that use for the first 10 years. "Rent, for the first 25 years, was set at 'seven percent of the current market value' . . . . Thereafter, appraisers would be appointed to 'determine the market value,' with rent for the remaining 27 years to 'be a sum equal to seven percent of such appraised value . . . .' " (*Id.* at p. 768.) During the first 25 years of the lease state and local regulations were enacted significantly impeding the conversion of mobilehome parks to other uses. Relying upon *Bullock's* and *Eltinge*, we agreed with the lessor that in the *Humphries* lease the term "market value" meant "market value" and not "use value," but concluded that a determination of "market value" required consideration of local and state regulations impacting the use of the property. (*Id.* at pp. 772-773.)

The *Bullock's, Eltinge*, and *Humphries* leases contemplated a rental based on a percentage of the fair market value of the property, not its use value or rental value. In the present case, however, the lease unequivocally specifies the rent is to be the "fair market *rental* value" of the theater building, not a percentage of its fair market value. This assumes a rental based upon the use of the premises, not its potential value to the lessors as a retail shopping center. Therefore, summary judgment for Wu was proper.

## II

■ Paragraph 18 of the lease provides for the award of attorneys' fees to the prevailing party in any action on the lease, including a declaratory relief action. As the prevailing party on this appeal Wu is entitled to an award of

---

[2] In an attempt to focus on this part of the *Eltinge* analysis, ICI urges Wu is not limited in the use of the premises despite the lease restrictions to a theater use, because Wu could make another use with the written consent of ICI, and it could not unreasonably withhold its consent. We are unpersuaded. That provision is nothing more than a statement of existing law. (*Kendall* v. *Ernest Pestana, Inc.* (1985) 40 Cal.3d 488 [220 Cal.Rptr. 818, 709 P.2d 837]; *Lippman* v. *Sears, Roebuck & Co.* (1955) 44 Cal.2d 136 [280 P.2d 775].) It is in no way tantamount to an unrestricted right to use the premises as Wu pleases.

reasonable attorneys' fees to be determined by the trial court. (*Leaf* v. *Phil Rauch, Inc.* (1975) 47 Cal.App.3d 371, 379 [120 Cal.Rptr. 749].)

The judgment is affirmed and the cause remanded to the trial court for a determination of a reasonable attorneys' fee for the appeal.

Sonenshine, J., and Moore, J., concurred.