[No. G011799. Fourth Dist., Div. Three. Nov. 18, 1992.]

RUSSELL RUOFF, Individually and as Conservator, etc., Plaintiff and Appellant, v.
HARBOR CREEK COMMUNITY ASSOCIATION et al., Defendants and Respondents.

**COUNSEL**

Dennis M. Mullen and Charles A. Gruber for Plaintiff and Appellant.

Dicaro, Highman, D'Antony, Dillard, Fuller & Gregor, Henry P. Schrenker, Sheri Laughlin Bills, Cassidy, Warner, Brown, Combs & Thurber, Lloyd W. Felver, Stockdale, Peckham & Werner, Kelly A. Woolsey, Waters, McCluskey & Boehle and Joseph R. Saunders for Defendants and Respondents.

## OPINION

**SONENSHINE, J.**—Martha Ruoff and Russell Ruoff, individually and as Martha's conservator, challenge summary judgments entered in favor of various defendants[1] in a suit arising out of Martha's slip and fall on a stairway in the common area of the 152-unit Harbor Creek complex. Martha sustained catastrophic injuries. According to appellants, whose statement is uncontradicted by respondents, on August 9, 1988, Martha fell backwards, landing at the bottom of the stairs, her foot wedged in a gap between the side of the building and the edge of the stairs. Comatose and bleeding, she was taken to Mission Hospital and admitted to the intensive care unit (ICU) where she was treated for multiple skull fractures. Due to complications, she underwent partial amputation of her left thumb, index and middle fingers. A month after the accident, a percutaneous endoscopic gastrostomy (insertion of a feeding tube in the stomach) was performed. The following month, a lumbo-peritoneal shunt was inserted in her spine for draining fluids. Martha remained in a coma. A tracheotomy tube inserted at the time of the accident was not removed for two and one-half months. Released from Mission Hospital after 107 days in the ICU, Martha was transferred to the Rehabilitation Institute of Santa Barbara, where she underwent a course of treatment and therapy until, after eight months, the Ruoffs were no longer able to pay for the institutional care. Martha now lives at home, where her 72-year-old husband takes care of her. She is unable to bathe, dress or feed herself. She is incontinent in bladder and bowel. Her diagnosis and prognosis include "probable permanent memory loss, gait disturbance, incontinence and other severe neurological abnormalities." Her only communication is "babble." She will require 24-hour-a-day care for the remainder of her life. Her medical expenses to date exceed $750,000.

The summary judgment argument of the defendants, individual owners of Harbor Creek condominium units, is based on the following undisputed facts: (1) They are tenants-in-common of the common areas of the complex,

---

[1]Summary judgments were granted in favor of Raymond J. Niksarian; Sonya Niksarian; Anne S. Bates; Frank Bates and Anne S. Bates, Trustees for the Trust Agreement of Frank F. Bates and Anne S. Bates; Warner Younis; Pat Younis; Judd L. Miller; William E. Hasbrouck; Robert Banks; Nancy Banks; Wendell F. Deeter and E. Violet Deeter as Trustees for the Deeter Family Revocable Trust; Ronald F. Lackey; Barbara A. Lackey; and Dorothy Auerbach.

each owning an undivided 1/152 interest; (2) they have delegated control and management of the common areas to their homeowners association (HOA), which has no ownership interest in the property; (3) the HOA has liability insurance of $1 million; and (4) it is authorized to assess its members for pro-rata contribution if a judgment exceeds policy limits. The owners argue that for these reasons, (a) Civil Code section 1365.7[2] should be read to immunize them from civil liability, and (b) departure from the common law rule of property owners' liability would serve the greater good and work no substantial detriment to injured third persons.

The Ruoffs contend the immunity of section 1365.7 is expressly limited to volunteer HOA officers or directors and cannot be expanded judicially to include others. The owners, as tenants-in-common in the common area, are subject to the same nondelegable duties to control and manage their property as are other property owners. The trial court agreed with the owners. We agree with the Ruoffs and reverse.

I

On appeal from summary judgment, the trial court's determination of a question of law is subject to independent review. (*Wu* v. *Interstate Consolidated Industries* (1991) 226 Cal.App.3d 1511, 1514 [277 Cal.Rptr. 546].) Initially, we note the Ruoffs' assertion that the trial court failed to fulfill its duty under Code of Civil Procedure section 437c, subdivision (g), to specify the reasons for its determination.[3] We agree the statement of reasons-by-reference was noncompliant. But the court's failure to perform its statutory duty does not automatically result in reversal. We need only determine whether the record establishes the owners' entitlement to summary judgment in their favor. As stated in *Barnette* v. *Delta Lines, Inc.* (1982) 137 Cal.App.3d 674, 682 [187 Cal.Rptr. 219]: "We are not confined, in

---

[2]Civil Code section 1365.7 is part of the Davis-Stirling Common Interest Development Act (Civ. Code, div. 2, pt. 4, ch. 1, § 1350 et seq.). The act provides conditional immunity from tort damages to "a volunteer officer or director who resides in the common interest development either as a tenant or as an owner of no more than two separate interests in that development." See discussion, *post*.

All further statutory references are to the Civil Code unless otherwise specified.

[3]Code of Civil Procedure section 437c, subdivision (g) provides, in pertinent part: "Upon the grant of a motion for summary judgment . . . the court shall . . . specify the reasons for its determination," referring to the evidence supporting and opposing which shows no triable issue exists.

When counsel asked the court to specify its reasons for granting the summary judgment motions, the court responded: "I have spent more time thinking about this than any other case in my inventory. I am incorporating every argument that the moving parties have made as the basis for my decision. I am throwing it all to the Fourth. [¶] Your briefs are the bases for your positions when the court of appeals [*sic*] deals with this issue. I will not make any independent findings."

considering the granting of the summary judgment, to the sufficiency of the stated reasons. It is the validity of the ruling which is reviewable and not the reasons therefor. [Citation.]" (See also *California Aviation, Inc.* v. *Leeds* (1991) 233 Cal.App.3d 724, 730-731 [284 Cal.Rptr. 687].)

## II

■ The summary judgments were granted on the basis that, as a matter of law, the individual condominium owners could not be held liable for injuries sustained in the common area of the Harbor Creek complex. The record establishes that the decision involved no determination of whether the owners had exercised due care; it involved only a determination that no duty existed.[4]

In the usual case, an owner or occupier of real property must exercise ordinary care in managing the property. (§ 1714, subd. (a).) The duty of care is owed to persons who come on the land (see generally, *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]), and ordinarily it is nondelegable. (*Swanberg* v. *O'Mectin* (1984) 157 Cal.App.3d 325, 331-332 [203 Cal.Rptr. 701].)

In the case of a condominium complex, section 1365.7 immunizes a volunteer officer or director of an association managing a common interest residential development from civil tort liability if (1) the injury-producing negligent act or omission was performed within the scope of association duties, was in good faith, and was not willful, wanton, or grossly negligent, *and* (2) the association maintained at least $1 million of applicable general liability insurance if the development exceeds 100 separate interests.[5] (§ 1365.7, subds. (a)(1), (2), (3) and (4)(B).) Subdivision (b) allows the volunteer officer or director to recover actual expenses incurred in executing the duties of the position without losing the statutory immunity. But subdivision (c) excludes from the definition of volunteer any officer or director who, at the time of the negligent act or omission, received compensation as an employee of statutorily designated persons or entities. Under subdivision (d), the association itself does not enjoy immunity for the negligent acts or omissions of its officers or directors. Finally, subdivision (e) expressly limits

---

[4]The court's order granting summary judgment states: "[T]he court finds as a matter of law that the aforementioned defendant homeowners did not breach any duty owed to the plaintiffs herein." The record establishes that no factual evidence regarding the owners' acts or omissions was before the court. The owners relied on the HOA's liability policy, its internal rules, and declarations of individual owners who said they did not exercise *control* of the common areas.

[5]The Harbor Creek complex contains 152 units, and there is no dispute that the number of separate interests exceeds 100.

the immunity of section 1365.7 to the designated persons: "This section shall only apply to a volunteer officer or director who resides in the common interest development either as a tenant or as an owner of no more than two separate interests in that development." We find this to be a comprehensive and extraordinarily clear immunity statute.

 Statutory interpretation presents a question of law. (*Schuhart v. Pinguelo* (1991) 230 Cal.App.3d 1599, 1607 [282 Cal.Rptr. 144].) The owners contend that in section 1365.7, the Legislature intended to immunize *them* from liability for tortious acts or omissions in the management and control of the commonly held property. Under established rules of statutory construction, we may not read such an intention into this unambiguous statute. "It is axiomatic that in the interpretation of a statute where the language is clear, its plain meaning should be followed. [Citation.]" (*Lubin v. Wilson* (1991) 232 Cal.App.3d 1422, 1427 [284 Cal.Rptr. 70]; see also *Forrest v. Trustees of Cal. State University & Colleges* (1984) 160 Cal.App.3d 357, 362 [206 Cal.Rptr. 595].) Moreover, we must attach significance to every word of a statute. (See *McLarand, Vasquez & Partners, Inc. v. Downey Savings & Loan Assn.* (1991) 231 Cal.App.3d 1450, 1454 [282 Cal.Rptr. 828].) If we were to read the statute as the owners urge, we would need to read *out* the express limitation of immunity of subdivision (e). We are not permitted or inclined to do that.[6]

We also reject the owners' convoluted argument that by reverse implication, based on a reading of *Davert v. Larson* (1985) 163 Cal.App.3d 407 [209 Cal.Rptr. 445], section 1365.7 endows them with a right to delegate their duties of control and management of the common areas and thus escape liability to which they would otherwise be subjected under established law.

In *Davert*, the Court of Appeal, in a case of first impression, reversed a summary judgment in favor of a defendant property owner who asserted "he owed no duty of care to plaintiffs as a landowner because he took title to his interest in the property subject to a recorded declaration of covenants, conditions and restrictions delegating exclusive control over the subject property to [a property owners' association]." (*Davert v. Larson, supra,* 163

---

[6]When it enacted section 1365.7, the Legislature was also aware of the Uniform Common Interest Ownership Act of 1982, but did not adopt it. Under section 3-107 of the uniform act, an HOA is responsible for maintenance of the common areas of a condominium complex, unless the HOA's declaration provides otherwise. Under section 3-113, individual unit owners are immune from civil liability for injuries occurring in the common areas if the HOA maintains sufficient liability insurance meeting certain standards and naming each condominium owner as an insured party with respect to liability based on his or her ownership of the common areas. Obviously, the Legislature and the authors of the uniform act took different paths.

Cal.App.3d at p. 409.) The owner claimed his ownership interest of 1/2500 was too small to provide a basis for liability and he personally exercised no control over the management of the property. (*Id.* at p. 410.) The appellate court noted with approval the conclusion of "a leading commentator" that "individual owners of common areas in California are liable to third parties for torts arising in common areas. [Citation.]" (*Id.* at p. 411.) In its discussion, the court alluded to the fact that existing California law did "not require insurance to protect third parties in the case of common area torts." (*Id.* at p. 412.) Thus, "relieving individual owners in common of liability would eliminate any motivation on the part of *any* party to exercise due care in the management and control of commonly owned property and could leave third parties with no remedy at law." (*Ibid.*) The *Davert* court concluded: "[T]enants in common of real property who delegate the control and management of the property to a separate legal entity should not be immunized from liability to third parties for tortious conduct." (*Ibid.*)

The owners say *Davert* means that if the duty of control and management is delegated to a separate legal entity and sufficient liability insurance is available for injured parties, then the reason for imposition of liability on the individual owners evaporates. The argument continues: Since section 1365.7 was enacted after publication of *Davert*, and requires HOA's to maintain certain minimum levels of liability insurance, the Legislature must have been reacting to *Davert* and intending to eliminate common law rules regarding property owners' liability.

The argument is crafty, but unavailing. ■ In the first place, when we are urged to find that a statute is intended to silently abrogate an established rule of law, we must heed the Supreme Court's admonition that "it should not 'be presumed that the Legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication.' [Citation.]" (*Theodor v. Superior Court* (1972) 8 Cal.3d 77, 92 [104 Cal.Rptr. 226, 501 P.2d 234]; see also *McLarand, Vasquez & Partners, Inc. v. Downey Savings & Loan Assn., supra,* 231 Cal.3d at p. 1455.) ■ In the second place, the owners' reliance on *Davert* for negative inferences is off the mark. The clear holding of *Davert* is that tenants in common who delegate control and management of the property remain jointly and severally liable for tortious acts or omissions causing injury to third persons. We do not deem the court's observation about the wisdom of retaining landowners' liability where ownership is shared to be judicial advice that a tenant in

common can buy his or her way out of liability by purchasing insurance for the property manager.[7]

## III

The owners attempt to justify the summary judgment with a number of other policy-type arguments to illustrate why we should rewrite section 1365.7. They assert the HOA's liability insurance of $1 million is sufficient to take care of the needs of the Ruoffs, who would therefore suffer no detriment if liability were not imposed on the individuals. But even if we agreed with the proposition in the abstract—and we do not—the issue of sufficiency of the insurance policy would be a question of fact, inappropriate for determination by summary judgment. (Code Civ. Proc., § 437c, subd. (c).)[8]

The owners also contend that because the HOA can make assessments against the association members for pro-rata shares of any judgment exceeding the policy limits, immunity for the individuals will not work any hardship on the Ruoffs. But, as the Ruoffs astutely observe, "[p]roblems with this approach abound,"[9] and "the power to assess is not the panacea Defendants argue." Indeed, it might prove to be a wholly illusory remedy.

The owners assert that under the HOA declaration of covenants, conditions and restrictions, the HOA is incorporated as a nonprofit mutual benefit

---

[7]We also reject the owners' half-hearted assertion that section 1365.7 violates equal protection under the federal and state Constitutions. The matter warrants little discussion. The owners say the immunity offered to the HOA's volunteer officers and directors "is irrational . . . because the effect is to immunize those who are vested with control over the common area, and allow potential liability to remain with those who retain no control over the common area." As the Ruoffs observe, there is no fundamental right or suspect class involved, thus the classification need only bear a rational relationship to a legitimate state purpose. (*Weber* v. *City Council* (1973) 9 Cal.3d 950, 959 [109 Cal.Rptr. 553, 513 P.2d 601].) The bill's author stated: "This bill is greatly needed to protect the directors and officers of the 13,000-16,000 community interest associations in California that will need 30,000 to 40,000 volunteers to serve on the boards of these associations each year. That need may not be met as many people are not volunteering because they fear being sued." (Letter dated Sept. 1, 1991, from Assemblywoman Lucy Killea to the Honorable George Deukmejian.)

[8]In light of the apparent irremediable nature of Martha's injuries and the continuing accrual of medical expenses which are already approaching the $1 million policy limit, the owners appear to be blowing smoke when they claim the insurance is "sufficient."

[9]The Ruoffs pose apt questions: "[W]hat happens to the current owners who sell their units before judgment? What happens to a unit owner whose individual insurance company denies coverage for an assessment in contract, but does [*sic*] over third party injuries occurring in common areas? What about those who sell after judgment, but before the assessment? What happens to a future unit owner whose individual insurance company denies coverage because the 'loss' preceded the commencement of the policy?"

corporation, therefore the members are entitled to immunity under Corporations Code section 7350, subdivision (a).[10] They argue that because the HOA is a corporation, the Ruoffs must look solely to the corporate assets. The problem with this contention is that the record does not establish the *fact* of incorporation.[11] Therefore, we express no opinion as to its merits.

The judgments in favor of the owners are reversed and the matter remanded for further proceedings in accordance with this decision. The Ruoffs shall recover their costs on appeal.

Moore, Acting P. J., and Wallin, J., concurred.

---

[10]Corporations Code section 7350, subdivision (a) relieves members of a nonprofit mutual benefit corporation from personal liability for the debts, liabilities or obligations of the corporation.

[11]The only proof of incorporation offered is a copy of article II, section 2.01 of the HOA declaration, stating: "*Organization of Association.* The Association is or shall be incorporated under the name of HARBOR CREEK COMMUNITY ASSOCIATION, as a corporation not for profit under the Nonprofit Mutual Benefit Corporation Law of the State of California." This is hardly proof. Moreover, the various separate statements of undisputed facts in support of the summary judgment motions do not contain any reference to incorporation and member immunity. Finally, we do not even know if such a defense is at issue in the lawsuit because we have not been provided with a copy of the answers filed by the defendants.