Filed 9/25/23

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| RUNNYMEDE HOLDINGS, LLC, | ) | BV 033886 |
| | ) | |
| Plaintiff and Respondent, | ) | Pasadena Trial Court |
| | ) | |
| v. | ) | No. 22PDUD01103 |
| | ) | |
| ANTUN FOSTER et al., | ) | |
| | ) | **OPINION** |
| Defendants and Appellants. | ) | |
| | ) | |
| | ) | |

Appeal from a judgment of the Superior Court of Los Angeles County, William D. Dodson, Judge.  Reversed

Benjamin Barnett, of Inner City Law Center for Defendant and Appellant Antun Foster. Dennis P. Block of Dennis P. Block and Associates for Plaintiff and Respondent Runnymede Holdings, LLC

In this action for unlawful detainer, defendant Antun Foster appeals from a judgment following the granting of a motion for summary judgment in favor of plaintiff Runnymede Holdings, LLC.  On appeal, Foster contends the summary judgment ruling was improper because: (1) there were material factual issues concerning the affirmative defenses he raised; and (2) a factual issue remained as to the materiality of any breach.  As explained below, we reverse the judgment because Foster has demonstrated triable issues of material fact exist.

1

FACTUAL AND PROCEDURAL BACKGROUND

On February 2, 2017, plaintiff entered into a rental agreement with Foster and Renita E. Richardson[1] (defendants) concerning the property located at 11721 Runnymede Street, #304 in North Hollywood, California. The initial rental term was for one year at a rental rate of $1878.61 per month. On January 18, 2019, plaintiff and defendants agreed to extend the lease agreement for a period of 18 months beginning February 1, 2019 through July 31, 2020 at a rental rate of $1,936 per month. Thereafter, pursuant to the terms of the agreement, the tenancy became month-to-month.

On June 9, 2022,[2] plaintiff filed a verified unlawful detainer complaint against defendants based on a three-day notice to perform covenants or quit. The three-day notice attached to the complaint related: "Pursuant to the change of terms of tenancy served on you on April 14, 2022, you were required to pay $1947.00 towards your security deposit. You failed to pay this amount within the 30 day notice period in violation of your rental agreement." Plaintiff also attached to the complaint a copy of a City of Los Angeles COVID-19 Renter Protections Fact Sheet in English and Spanish which noted the City of Los Angeles' eviction protections applied to all rental units in the City of Los Angeles and summarized rental tenant protections that were in place due to COVID-19.

On June 14, Foster filed an answer in which he generally denied the allegations but asserted no affirmative defenses.

*Motion for Summary Judgment*

On August 3, plaintiff filed a motion for summary judgment on the grounds that the undisputed facts established plaintiff gave defendants a written notice of change of the terms of tenancy increasing the amount of the security deposit; plaintiff served on defendants a notice to perform covenants or quit concerning payment of the increased security deposit; defendants

---

[1]In his declaration opposing the summary judgment motion, Foster states Richardson was his co-signer on the lease. Richardson was a named defendant in the underlying unlawful detainer complaint. However, she is not a party to this appeal.

[2]Hereafter, all unspecified dates are to the year 2022.

breached the rental agreement by failing to pay that amount within the allotted time; and despite failing to cure the breach, defendants remained in possession of the subject property. Plaintiff also argued Foster's failure to assert any affirmative defenses in his answer indicated there were no disputed facts and, in any event, Los Angeles Municipal Code (LAMC) section 49.99.2 and the Los Angeles County Eviction Moratorium were inapplicable to the unlawful detainer action.

The motion was supported by declarations from David Asiss (plaintiff's managing member) and Erick Martin Salas (a registered process server) and copies of the original lease agreement, the notice of change of terms of tenancy, and the COVID-19 Renter Protections Fact Sheet in English and Spanish, which were attached to the declarations as exhibits.

On August 15, Foster filed an opposition to the motion, arguing triable issues of material fact existed as to whether the eviction was barred because his inability to pay was due to the COVID-19 pandemic; the eviction action was brought in good faith and in a non-retaliatory manner; plaintiff waived any alleged breach of the tenancy terms; and the alleged breach was material. Foster acknowledged his original responsive pleading, which was filed in propria persona, included only a general denial and "[i]f given the chance, . . . [he] will seek leave from the Court pursuant to Code of Civil Procedure § 473(a) to submit an amended answer that raises specific affirmative defenses, including those discussed in this opposition brief." Foster submitted a declaration and various exhibits in support of his opposition.

At the hearing of the motion on August 16, defense counsel argued there was an issue concerning whether plaintiff waived the alleged breach because Foster had made a partial payment of the "newly-imposed security deposit" before the complaint was filed and, as of the date Foster's opposition to the motion was filed, plaintiff had not returned that partial payment to him. Defense counsel also argued there remained a factual question as to whether the failure to "completely provide that security deposit in this time frame is actually a material term within the bargain that the parties have." In addition, he maintained there were open questions concerning whether a security deposit imposed during the course of a tenancy was permissible

3

under Civil Code section 1950.5,[3] which he asserted defines a security deposit as an advance payment of rent, and whether plaintiff brought the action in retaliation for defendants' continued inability to pay rent given plaintiff was aware Foster had suffered a loss of income as a result of the COVID-19 pandemic.

Plaintiff's counsel asserted the increase in the security deposit was justified because of high inflation and so that plaintiff could obtain sufficient security from defendants in the event they moved out and repairs were necessary because the old security deposit amount would not adequately compensate plaintiff. Counsel added the eviction action was commenced due to Foster's failure to perform a covenant to pay the new security deposit within three days of receiving the notice, not for nonpayment of rent. Further counsel stated COVID-19 protections were inapplicable to the facts of this case because plaintiff did not seek to evict for nonpayment of rent. He also argued defendants' partial payment of $800 was not a complete tender of the full amount owed and, thus, there was no waiver of the alleged breach, even if plaintiff had not returned the payment to defendants, and, in any event, any such tender occurred after expiration of the three-day notice period.

After hearing argument, the court took the matter under submission. A minute order dated August 16 reveals the court granted the motion for summary judgment against defendants

---

[3]Civil Code section 1950.5 applies to security for a rental agreement for residential property that is used as the dwelling of the tenant. (Civ. Code, § 1950.5, subd. (a).) "As used in this section, 'security' means any payment, fee, deposit, or charge, including, but not limited to, any payment, fee, deposit, or charge, except as provided in Section 1950.6, that is imposed at the beginning of the tenancy to be used to reimburse the landlord for costs associated with processing a new tenant or that is imposed as an advance payment of rent, used or to be used for any purpose, including, but not limited to, any of the following: [¶] (1) The compensation of a landlord for a tenant's default in the payment of rent. [¶] (2) The repair of damages to the premises, exclusive of ordinary wear and tear, caused by the tenant or by a guest or licensee of the tenant. [¶] (3) The cleaning of the premises upon termination of the tenancy necessary to return the unit to the same level of cleanliness it was in at the inception of the tenancy . . . [¶] (4) To remedy future defaults by the tenant in any obligation under the rental agreement to restore, replace, or return personal property or appurtenances, exclusive of ordinary wear and tear, if the security deposit is authorized to be applied thereto by the rental agreement." (Civ. Code, § 1950.5, subd. (b).)

on the basis that there was "no material issue of fact to be tried."[4]  The minute order further noted Foster stated in his declaration he submitted a money order for $800 to plaintiff's property manager, yet "we are not given a copy of any money order or other negotiable instrument and defendant does not say that the money order was marked in any way restricting payment to the balance on the security deposit.  In any event, as argued by plaintiff, this argument is outside the issues raised by the answer."  On August 22, the court issued an order noting the motion for summary judgment had been granted and good cause existed for entry of a judgment.  It directed the clerk to enter judgment in the amount of $5,291.46 in plaintiff's favor as against defendants.  Notice of the judgment was served by mail on the parties on August 29.

On September 7, defense counsel filed a request for specification of reasons for granting summary judgment in plaintiff's favor, in which he asked the court to specify if it found there were no triable issues of material fact concerning whether the eviction was barred because Foster was unable to pay because of the COVIID-19 pandemic; the eviction was brought in good faith; the eviction was brought in a non-retaliatory manner; and any alleged breach of the tenancy terms was in fact material.  Foster received no response from the court.  Foster filed a timely appeal of the judgment on September 22.

DISCUSSION

*Standard of Review*

"[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prime facie showing of the existence of a triable issue of material fact."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*); see Code Civ. Proc., § 437c, subd. (p)(1).[5])  Where summary judgment has been granted, we

---

[4]A nunc pro tunc order issued on August 22 indicates the court corrected the August 16 order to reflect the court had granted, as opposed to denied, plaintiff's motion for summary judgment.

[5]All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

review the trial court's ruling de novo. (*Aguilar*, *supra*, 25 Cal.4th at p. 860.) We consider the evidence presented by the parties in connection with the motion and all the uncontradicted inferences the evidence reasonably supports. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) The reviewing court "'examine[s] the facts presented to the trial court and determine[s] their effect as a matter of law.' [Citation.] [It] review[s] the entire record, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' [Citation.] Evidence presented in opposition to summary judgment is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion. [Citation.]'" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618 (*Regents*).) The reviewing court "must draw from the evidence all reasonable inferences in the light most favorable to the party opposing summary judgment." (*Caliber Paving Co., Inc. v. Rexford Industrial Realty & Management, Inc.* (2020) 54 Cal.App.5th 175, 190 (*Caliber Paving*).) We affirm summary judgment where the moving party demonstrates that no triable issue of material fact exists and that it is entitled to judgment as a matter of law. (§ 437c, subd. (c).)

*Analysis*

Foster contends the court improperly granted plaintiff's motion for summary judgment because his opposition to the motion created triable issues of material fact. He acknowledges he failed to assert the affirmative defenses discussed in the opposition papers in his answer to the complaint, but he insists they were "properly raised" in the opposition and at the hearing of the motion and, therefore, plaintiff was not prejudiced.

*Effect of Foster's general denial*

Generally, the pleadings determine the relevant issues on a summary judgment motion, and the motion may not be granted or denied on issues not raised by the pleadings. (See *Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1663 ["Summary judgment cannot be granted on a ground not raised by the pleadings"]; *FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 382-383 ["a defect in the answer may entitle the

6

moving party plaintiff to a summary judgment if the only matter in dispute is a defense that has not been intelligibly asserted in the answer"].)

Given the statement in the August 16 minute order that Foster had not provided proof that he had earmarked any sum to payment on the balance of the security deposit and, in any event, Foster's argument concerning such payment was outside the issues raised by his answer, it appears the court accepted plaintiff's argument that Foster was precluded from having his defenses considered because he did not assert them as affirmative defenses in his answer. But Foster cites *Cruey v. Gannett Co.* (1998) 64 Cal.App.4th 356, 367 (*Cruey*) for the proposition that a party need only have adequate notice and an opportunity to respond to a defense introduced at the time of the summary judgment proceeding. We agree.

"Given the long-standing California court policy of exercising liberality in permitting amendments to pleadings at any stage of the proceedings [citation] and of disregarding errors or defects in pleadings unless substantial rights are affected [citation], we believe that a party should be permitted to introduce the defense . . . in a summary judgment procedure so long as the opposing party has adequate notice and opportunity to respond." (*Cruey*, *supra*, 64 Cal.App.4th at p. 367; see also *Wang v. Nibbelink* (2016) 4 Cal.App.5th 1, 11 [same].) A court then may consider unpleaded affirmative defenses, if the complaint alleges facts supporting the defenses, and the defenses are fairly raised and met in the summary judgment papers.

Thus, where defenses were raised in Foster's opposition to the motion for summary judgment, and plaintiff thereby had sufficient notice of, and an opportunity to respond on the merits to, Foster's assertion of those defenses, plaintiff has not shown it was prejudiced by the process. Moreover, we note plaintiff even anticipatorily raised the inapplicability of eviction moratoria in its motion for summary judgment and did, indeed, respond at oral argument to the defenses Foster raised in his opposition to the motion. Therefore, for purposes of determining whether the grant of summary judgment was appropriate in this case, we may consider whether Foster's affirmative defenses created a triable issue of material fact.

Plaintiff met its initial burden on summary judgment by providing the notice of change of terms of tenancy indicating the security deposit was to be increased effective 30 days after

service of the notice; Asiss declared defendant did not pay the security deposit balance after the three-day notice to perform covenants or quit was served or at any other time; and Foster remained in possession of the property at the time plaintiff filed the motion for summary judgment.

As the burden shifted to Foster to establish the existence of a triable issue of material fact, Foster stated in his declaration in support of his opposition to the motion his employers stopped paying him after they closed due to the COVID-19 pandemic; he informed plaintiff he was unable to pay rent as a result and provided proof he had applied to a rent relief program; after Foster received the three-day notice to perform or quit, he was unable to pay the full amount plaintiff demanded but submitted a money order for $800 as payment toward the security deposit balance that was owed; and, although the building manager at the property informed Foster the property manager intended to return the $800 payment, Foster did not believe the property manager had done so. Defense counsel submitted a declaration and attached a webpage which Foster asserted was evidence plaintiff had manufactured the unlawful detainer action to circumvent the impact of pandemic-based legal protections and thereby had acted in bad faith and as a means to retaliate against Foster for having benefited from those protections.

In its August 22 order for the entry of judgment, the court did not specify the reasons for granting summary judgment in plaintiff's favor nor did it do so at the oral argument before taking the matter under submission. In indicating the court found no material issue of fact, the August 16 minute order noted only Foster's failure to provide proof of payment toward the balance of the security deposit as a basis for granting the motion, thereby impliedly negating Foster's waiver defense. However, Foster's other defenses concerning whether the COVID-19 eviction moratorium was applicable; whether the eviction was sought in good faith and was unlawful because it was for retaliatory reasons; and whether defendant materially breached the lease were not addressed, even though defendant asked the court to state whether its ruling granting the summary judgment motion was also based on finding no triable issue of material fact existed on those specific grounds.

The court's failure to provide a sufficient statement of reasons for granting summary judgment is not automatic grounds for reversal. "'It is the validity of the ruling which is reviewable and not the reasons therefor. [Citation.]'" (*Ruoff v. Harbor Creek Community Assn.* (1992) 10 Cal.App.4th 1624, 1628 (*Ruoff*); see also *Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336 [trial court's stated reasons for granting summary judgment are not binding because appellate court reviews its ruling, not its rationale].) "The lack of a statement of reasons presents no harm where . . . our independent review establishes the validity of the judgment." (*Soto v. State of California* (1997) 56 Cal.App.4th 196, 199.)

Thus, even though the court did not address all of Foster's defenses in determining whether plaintiff was entitled to summary judgment, as the reviewing court considering the issues de novo, we are not precluded from conducting such a review, as long as the record provided is adequate for us to do so. (*Ruoff*, *supra*, 10 Cal.App.4th at p. 1627.) In the instant case, the parties briefed and argued the issues. So, we are not foreclosed from considering them.

### *Waiver*

Foster argues plaintiff waived its ability to evict him because, before filing the unlawful detainer complaint, plaintiff accepted and did not return an $800 payment that was to be applied to the security deposit.

"Waiver is a question of fact for the trial court. [Citation.] Waiver is an intentional relinquishment of a known right. [Citation.] It may be implied through conduct manifesting an intention to waive. [Citation.] Acceptance of benefits under a lease is conduct that supports a finding of waiver.' [Citation.]" (*Gould v. Corinthian Colleges, Inc.* (2011) 192 Cal.App.4th 1176, 1179 (*Gould*).)

If a landlord has full knowledge of all pertinent facts, acceptance of rent or other benefits after breach of a covenant constitutes a waiver of the breach that precludes the landlord from declaring forfeiture of the lease by reason of the breach. (*Kern Sunset Oil Co.* v. *Good Roads Oil Co.* (1931) 214 Cal. 435, 440-441; *Salton Community Services Dist. v. Southard* (1967) 256 Cal.App.2d 526, 533; see also *EDC Assocs., Ltd v. Gutierrez* (1984) 153

9

Cal.App.3d 167, 170-171 [acceptance of rent after the notice period expires may constitute a waiver of breach].) Even if a lease agreement contains an anti-waiver clause, a party's conduct may, nonetheless, constitute waiver. (*Gould*, *supra*, 192 Cal.App.4th at p. 1180; see also *Bettelheim v. Hagstrom Food Stores, Inc*. (1952) 113 Cal.App.2d 873, 878 (*Bettelheim*)["Even a waiver clause may be waived by conduct"].)

Paragraph 32 in the rental agreement in which the parties entered provides "[a]cceptance of rent following a breach of this agreement shall not be deemed to constitute a waiver of such breach." But, this is counterbalanced by Foster's allegation plaintiff retained the $800 payment before plaintiff filed the complaint in this action, conduct which may be deemed inconsistent with plaintiff's intent to evict Foster. Such conduct may be deemed to constitute waiver, notwithstanding the anti-waiver provision in the lease agreement. (*Gould*, *supra*, 192 Cal.App.4th at p. 1180; *Bettelheim*, *supra*, 113 Cal.App.2d at p. 878.)

In a declaration Foster submitted in support of his opposition to the summary judgment motion, Foster declared he made a partial payment of $800 toward the increased security deposit before the complaint had been filed; informed the property manager of the purpose for the payment; the manager informed him the property manager intended to return the payment to Foster; and he had not yet received it.

In its ruling, the trial court noted Foster stated he did not think plaintiff returned the $800 payment to him and Foster did not present a copy of any negotiable instrument nor state the payment was marked in such a manner to indicate it was for payment on the security deposit balance. The court took this position although evidence presented by Foster in opposition to the summary judgment motion was to be liberally construed, with any doubts about such evidence resolved in Foster's favor (*Regents*, *supra*, 4 Cal.5th at p. 618; see also *Caliber Paving*, *supra*, 54 Cal.App.5th at p. 190 [as reviewing court, we must draw from evidence all reasonable inferences in the light most favorable to party opposing summary judgment]). Further, at no time did plaintiff dispute the evidence Foster presented regarding the

$800 payment nor otherwise present any evidence contradicting it; plaintiff only asserted Foster had not unequivocally stated plaintiff had not returned the $800 to him. [6]

Thus, the factual issue of whether the partial payment had been returned to Foster remained open and unresolved. In sum, the court did not expressly address whether the partial payment, submitted after expiration of the three-day notice period but before the filling of the complaint, and plaintiff's acceptance and purported failure to return the payment constituted a waiver.

On the basis of the record before us, we conclude Foster sufficiently presented evidence that created a triable issue of material fact concerning waiver which the jury should decide.

### *Applicability of pandemic-related protections*

Foster contends, because he was unable to pay the security deposit due to the pandemic, Los Angeles Municipal Code section 49.99.2, subdivision (A) (section 49.99.2(A)) prevented plaintiff from evicting him. He acknowledges section 49.99.2(A) applies to a tenant's inability to pay rent. Nonetheless, in arguing the payment of the security deposit should be construed as being synonymous to an advance payment of rent, Foster also recognizes his defense that he was protected from eviction "rests on an arguable legal question regarding the proper interpretation of Civil Code § 1950.5."

"'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] The well-established rules for performing this task require us to begin by examining the statutory

---

[6]The record before us is not clear regarding the bases for the court's conclusion. To the extent the trial court weighed plaintiff's lack of any evidence or inferences to be drawn from that against Foster's evidence and inferences to be drawn from it as though it was sitting as the trier of fact, the California Supreme Court counsels us in *Aguilar* that the court may not grant a motion for summary judgment "'based on inferences …, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact.'" (*Aguilar*, *supra*, 25 Cal.4th at p. 856 (citing § 437c, subd. (c)).) The trial court is permitted to determine what any evidence or inference could show or imply to a reasonable trier of fact; but, in so doing, it does not decide on any finding on its own, it only decides what finding such a trier of fact could make for itself. (*Ibid.*) Nothing in the record indicates the court undertook such a weighing and analysis.

11

language, giving it a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language in isolation; rather, we look to the statute's entire substance in order to determine its scope and purposes. [Citation.] . . . If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history." (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106-1107.)

Section 49.99.2(A) expressly provides "no Owner shall endeavor to evict or evict a residential tenant for non-payment of rent if the tenant is unable to pay rent due to circumstances related to the COVID-19 pandemic." Foster's failure to pay the increased security deposit is not covered by those specific terms of the statute because plaintiff does not allege Foster failed to pay rent; rather, plaintiff asserts the action is based on a breach of the covenant to pay an increased amount of the security deposit. Nonetheless, Foster argues that under Civil Code section 1950.5 "security" is defined as a "payment, fee, deposit, or charge" that is imposed either at the beginning of the tenancy for the purpose of reimbursing a landlord for costs associated with processing a new tenant" or as an advance payment of rent to be used for any purpose. He claims, because the increased security deposit in this matter was imposed during the tenancy, "it must be a 'payment, fee, deposit, or charge . . . imposed as an advance payment of rent, used or to be used for any purpose.'" Therefore, Foster proclaims he is entitled to raise section 49.99.2(A) as an affirmative defense because plaintiff was seeking to evict him for his failure to pay a certain amount of rent.[7]

In Civil Code section 1950.5, subdivision (b), "security" is defined, in relevant part, as "any payment, fee, deposit, or charge . . . that is imposed *at the beginning of the tenancy* to be used to reimburse the landlord for costs associated with processing a new tenant or that is

---

[7]Foster acknowledges California courts have traditionally considered a security deposit to be distinct from rent and cited *Action Apartment Association v. Santa Monica Rent Control Bd.* (2001) 94 Cal.App.4th 587, 599-600 in that regard.

imposed as an advance payment of rent, used or to be used for any purpose . . . ." (Italics added.) The plain language of the statute establishes that a security deposit may be imposed as an advance payment of rent. Therefore, it becomes a factual issue, given the specific circumstances of this case, whether the increased security deposit imposed by plaintiff constituted an advance payment of rent.

First, in the instant case, the increased security deposit was imposed during the pendency of the tenancy, not at the beginning of it. Therefore, a viable argument may be made that increasing the amount of the security deposit while the tenancy is pending would make that charge something other than simply "security." Second, to the extent a security deposit may eventually be used at the end of the tenancy to cover any shortfall in rental payments, that would lend support to Foster's contention nonpayment of an increased amount of the security deposit is equivalent to nonpayment of a party's rent. Third, plaintiff's labeling of the increase in the security deposit as "security" is not determinative. Plaintiff increased the security deposit five years into Foster's lease of the premises and during the pandemic, after Foster had not paid rent for at least two years.[8] Plaintiff provided no evidence that when rent was increased in the past, it also increased the security deposit. Moreover, we cannot conclusively say, as a matter of law, every time a landlord increases the amount of security deposit during the tenancy, that increase would not constitute an advance payment of rent.

Therefore, under the particular circumstances of this case, Foster's contention, that under section 49.99.2 (A) he was protected from being evicted because his failure to make an advance payment of rent was due to the pandemic, cannot be discounted. For that reason, whether the

---

[8]Plaintiff cites Civil Code section 827 as providing the legal grounds for it to change the terms of the month-to-month tenancy. That statute provides, in relevant part, " in all leases . . . from week to week, month to month, or other period less than a month, the landlord may, upon giving notice in writing to the tenant . . . change the terms of the lease . . . ." (Civ. Code, § 827, subd. (a).) But some rent control ordinances do not permit a landlord to unilaterally change a term of a rental agreement and then evict the tenant for violation of the changed term unless the tenant agreed in writing to the change. (See, e.g., Rent Stabilization Ordinance of the City of Los Angeles, LAMC, § 151.09(A)(2)(c).) However, Foster has made no allegation, nor has he presented any evidence, of the existence of such an ordinance that would apply in this case for the property located in North Hollywood.

13

increased security deposit amounted to an advance payment of rent amounts to a triable issue of material fact that should go to the jury.

*Foster's allegation concerning plaintiff's lack of good faith and retaliation*

"The existence or nonexistence of a landlord's retaliatory motive is ordinarily a question of fact." (*Western Land Office, Inc. v. Cervantes* (1985) 175 Cal.App.3d 724, 731; see also *Schweiger v. Superior Court of Alameda County* (1970) 3 Cal.3d 507, 517 ["'The question of permissible or impermissible purpose is one of fact for the court or jury'"]; *Four Seas Inv. Corp. v. International Hotel Tenants' Assn.* (1978) 81 Cal.App.3d 604, 610 (*Four Seas Inv.*) [issue of retaliatory motive "is ordinarily a factual issue to be resolved by the trier of fact" and can be submitted to a jury when substantial evidence has been presented in support of it]; *Department of Transportation v. Kerrigan* (1984) 153 Cal.App.3d Supp. 41, 46 [since section 1171 provides parties in an unlawful detainer action are entitled to have all issues of fact determined by a jury, and the statutory defense of retaliatory eviction under Civil Code section 1942.5 may be pleaded as a defense in an unlawful detainer action, then section 1171 necessarily allows for a jury trial on this issue].)

Foster's contention plaintiff lacked good faith in evicting him hinges on his claim plaintiff did so for retaliatory purposes because Foster was unable to pay rent as a consequence of the financial hardship he faced due to the pandemic, and plaintiff, therefore, violated Civil Code section 1942.5 (section 1942.5). That statute provides, in relevant part, "it is unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of those acts, for the purpose of retaliating against the lessee because the lessee has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law." (Civ. Code, § 1942.5, subd. (d).)

Foster "bear[s] the burden of producing evidence that the lessor's conduct was, in fact, retaliatory." (Civ. Code, § 1942.5, subd. (d).) Foster presented evidence that, on a website plaintiff's counsel hosted, counsel posted an article entitled "Evictions Can Now Proceed" in which counsel offered that landlords could circumvent the legal protections afforded to tenants

because of the pandemic by increasing the amount of their security deposit and, when the tenants failed to pay that amount, landlords could evict them.[9]  Foster further contends, by following that stratagem devised by its counsel, plaintiff pursued the eviction in bad faith to prevent him from continuing to protect himself from an eviction for nonpayment of rent during the pandemic because plaintiff knew Foster could not even pay rent let alone the increased amount of security deposit.

It is uncontroverted plaintiff increased the amount of the security deposit after it had not received rent from Foster for approximately two years during the pandemic, and there was no evidence presented of plaintiff having increased the security deposit at any time before then.  Thus, Foster's contention plaintiff acted in bad faith because it increased the amount of the security deposit for no reason other than to manufacture a default to evict him creates a factual issue to be resolved by the jury.  This set of facts, combined with plaintiff counsel's website posting, may constitute evidence from which an inference of bad faith and retaliatory conduct is "reasonably deducible."  (§ 437c, subd. (c); *Merrill v. Navegar*, *supra*, 26 Cal. 4th at p. 476; *Caliber Paving*, *supra*, 54 Cal.App.5th at p. 190.)  Thus, such evidence would be sufficient to be submitted to the jury as the trier of fact.  (*Feldman v. 1100 Park Lane Assocs*. (2008) 160 Cal.App.4th 1467, 1492-1493; *Four Seas Inv.*, *supra*, 81 Cal.App.3d at p. 610.)  Also, if the jury were to find the increased security deposit amounted to an advanced payment of rent, "it is unlawful for a lessor to increase rent . . . [or] bring an action to recover possession . . . for the purpose of retaliating against the lessee . . . ."  (Civ. Code, § 1942.5, subd. (d).)[10]

---

[9]When Foster raised the presumption of a retaliatory motive on plaintiff's part, plaintiff explained it was motivated to increase the security deposit for a business purpose—to ensure there would be a sufficient amount of funds available in the event Foster left the property and repairs would be necessary.  But no evidence was presented an increased security deposit was necessary because Foster was a threat to vacate the property or to leave the property in a state of uncleanliness, if he were to vacate it.

[10]Whether or not section 1942.5 applies to the facts and circumstances of this case, tenants may also rely upon decisional law to assert the retaliation defense in appropriate cases.  (See Civ. Code, § 1942.5, subd. (j) ["the remedies provided by this section shall be in addition to any other remedies provided by statutory or decisional law"]; *Barela v. Superior Court* (1981) 30 Cal.3d 244, 251 ["California has two parallel and independent sources for the doctrine of retaliatory eviction"]; *Rich v.*

Thus, we find that, through Foster's contention and the evidence he presented that plaintiff manufactured the instant action because Foster had availed himself of pandemic-related legal protections, Foster established a triable issue of material fact to be decided by the jury concerning a lack of good faith and retaliation on plaintiff's part.

*Materiality of breach*

"Normally the question of whether a breach of an obligation is a material breach, so as to excuse performance by the other party, is a question of fact." (*Brown v. Grimes* (2011) 192 Cal.App.4th 265, 277.)

Paragraph 24 of the lease agreement in the instant case provides the parties agree "that every condition, covenant, and provision of this Agreement is material and reasonable" and any breach would constitute a material breach. The notice of change of lease terms regarding the security deposit became a covenant of the lease requiring defendant to pay the increased amount. Nonetheless, to the extent enforcement of this materiality clause would lead to forfeiture of the lease, a tenant is not foreclosed from arguing breach of the residential lease agreement must be material to justify such forfeiture. (*Boston LLC v. Juarez* (2016) 245 Cal.App.4th 75, 82 (*Boston*).) The Court of Appeal in *Boston* relied on a long line of cases that hold a lease can be terminated only for a material breach, even if the residential lease contains a clause, like the one in the instant case, that dispenses with the materiality requirement. (*Id.* at p. 81.)

As explained above, in addition to claiming he made a partial payment and manifested an intent to fully pay the increased amount of the security deposit, Foster averred plaintiff did not return the amount he had tendered. But plaintiff offered no argument to debunk Foster's contention other than to point out Foster's assertion in this regard was not unequivocal. Given this set of facts, if the jury concludes plaintiff did not waive its ability to evict Foster, then the jury can consider these issues in deciding whether any breach was material. (See *Whitney Inv.*

*Schwab* (1998) 63 Cal.App.4th 803, 811 ["tenants who are the victims of retaliatory conduct by their landlords have complementary rights of action both in common law and under the statutory scheme adopted by the Legislature"].)

*Co. v. Westview Dev. Co.* (1969) 273 Cal.App.2d 594, 601 ["whether a breach is so material as to constitute cause for the injured party to terminate a contract is ordinarily a question for the trier of fact"].)

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. Foster is to recover his costs on appeal.

_____
Richardson, J.

We concur:

_____          _____
P. McKay, P. J.                                                  Kumar, J.